**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**BRADLEY WILLIS,**                                    \*

    **Plaintiff**                                          \*

    **v.**                                                 \*              **CIVIL NO. JKB-16-1388**

**ANNE ARUNDEL COUNTY, MARYLAND,** \*

    **Defendant**                                        \*

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

<u>**MEMORANDUM**</u>

Plaintiff alleges that his employer, Anne Arundel County, discriminated against him in violation of Title 20 of the Maryland State Government Article (Count I), Title VII of the Civil Rights Act of 1964 (Count II), Article 24 of the Maryland Declaration of Rights (Count III), and 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution (Count IV).  (Compl., ECF No. 2.)  The Defendant has moved for summary judgment.  (ECF No. 23.)  That motion is fully briefed (ECF Nos. 31, 39), and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016.)  For the reasons stated below, Defendant's motion will be granted, and judgment will be entered in its favor.

**I.      *STANDARD FOR SUMMARY JUDGMENT***

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing

the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. *Id.*

## II.   FACTUAL BACKGROUND[1]

Plaintiff, who is a white male, has been employed by the Anne Arundel County Fire Department ("the Department") since 1996. (Willis Depo. 25:12, ECF No. 31-3.) The Department maintains 31 different fire stations located around the county and employs over 800 professional firefighters and emergency medical service providers, who are organized in a rank structure and are supplemented by 450 volunteers. (Graves Aff. ¶¶ 4, 5, ECF No. 23-3.) At the time of the relevant events in this case, the record reflects that Defendant was under public scrutiny for the lack of racial and gender diversity among its employees. (Cox Depo. 155:8–159:15, ECF No. 31-6; Articles from the Capital Gazette, ECF No. 31-41).

Plaintiff began his career as a Firefighter II, the Department's entry-level position for its professional employees. (Willis Depo 25:5–10.) In April of 2005, Plaintiff was promoted to

---

[1] On this motion for summary judgment, the facts and the inferences to be drawn from them are taken in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). The facts as presented in this section are undisputed.

Lieutenant, an officer's rank with supervisory responsibilities over one shift at a given fire station.  (*Id.* at 34:17–20; Graves Aff. ¶¶ 13, 14.)  In March of 2008, he was promoted again to Captain, a rank with responsibilities that overlap and exceed those of a Lieutenant in that a Captain also directly supervises an individual shift but also functions as the ranking officer at a firehouse with supervisory responsibilities over the Lieutenants.  (Willis Depo. 44:6–7, 67:3-21; Graves Aff. ¶¶ 13–15.)  Plaintiff held the rank of Captain until he was demoted to Firefighter II effective November 27, 2013.[2]  (Cox/Willis Letter, ECF No. 31-29.)

Plaintiff's demotion was the eventual consequence of a complaint filed by one of his former subordinates on August 30, 2013.  (Swindle Rep. 1, ECF No. 31-16.)  That complaint triggered an investigation by Division Chief Keith Swindle, who was the Department's Equal Employment Opportunity ("EEO") Officer at the time.  (Swindle Depo. 16:17–21:18:, ECF No. 31-4.)  As EEO Officer, Swindle was responsible for, among other things, investigating alleged violations of the Department's workplace harassment and discrimination policy published in its Operating Procedural Manual 7 (OPM-7).  (Graves Aff. ¶¶ 8, 10.)

While the investigation was pending, Plaintiff was assigned to the Department's Logistical Support Center, which took him off of his regular schedule and prevented him from earning overtime.  (Willis Depo. 276:19–277:6; Cox Depo. 78:5–11.)  Through interviews with several employees who had been under Plaintiff's command, Swindle's investigation found the following about Plaintiff:

1) He created a hostile work environment by regularly using and permitting the use of profanity and inappropriate, sexually explicit comments, often directed at a female subordinate (Swindle Rep. 6);

2) He blew cigar smoke in the face of a subordinate (*id.* at 7);

---

[2] Plaintiff was subsequently promoted to Firefighter III on January 15, 2015.  (Willis Depo. 267:14-17.)

3) He smashed an egg on a subordinate's head (*id.*); and

4) He enabled and agitated a contentious relationship between subordinates (*id.* at 9).

Swindle also found that Plaintiff showed a lack of candor with investigators. (*Id.* at 10.) As a consequence of these findings, Swindle concluded that Plaintiff's actions were inconsistent with his position as an officer and recommended that the Department terminate Plaintiff's employment. (*Id.*)

The Department held a pre-discharge hearing on November 25, 2013, at which Plaintiff and his union representative, Keith Whalen, argued against Plaintiff's termination. (Cox/Willis Letter; Willis Decl. ¶ 5, ECF No. 31-5.) Two days later, on November 27, 2013, Whalen successfully intervened on Plaintiff's behalf with Fire Chief Michael Cox. (Cox Depo. 47:18–49:14.) In lieu of termination, Cox issued the lesser discipline of a demotion to the rank of Firefighter II, a fifteen-day suspension, and an agreement that Plaintiff would be ineligible to apply for an officer-level promotion for three years. (Cox/Willis Letter.) Whalen communicated this punishment to Plaintiff that same day by telephone and e-mail[3] (Willis Depo. 127:3–130:2; Whalen E-mail, ECF No. 31-28), and Plaintiff received formal written acknowledgment of the offer via certified mail on December 4, 2013 (Hahn Decl. ¶¶ 3–4, ECF No. 31-43).

In September of 2014, Plaintiff learned of another Departmental investigation into alleged misconduct by an African American Lieutenant ("Lt. J."). (Willis Depo. 220: 2–4.) That investigation, conducted by Chief of Staff Carl Lee,[4] was initiated when four of Lt. J.'s subordinates filed a complaint on August 14, 2014. (Lee Aff. ¶ 7, ECF No. 23-4.) While the

---

[3] The details of the arrangement as communicated by Whalen varied slightly from those officially extended by the Department: Whalen provided an earlier date on which Plaintiff would next be able to apply to return to an officer's rank, and he also indicated that Plaintiff would have to waive his right to grieve the Department's disciplinary action, a provision that was not formally included by the Department. (*Compare* Whalen Email *with* Cox/Willis Letter.)

[4] The Department hired Lee for the newly-created position of Chief of Staff in February of 2014, and part of his duties included internal investigations into personnel matters and disciplinary issues, including violations of OPM-7. (Lee Aff. ¶¶ 3, 5.)

investigation was ongoing, Lt. J. was temporarily assigned to another fire station, allowing him to remain on his normal schedule and to accrue overtime.  (*Id.* at ¶ 9; Cox Depo. 174:10–175:4.) Lee's report, submitted on November 17, 2014, found that Lt. J. falsely accused and inappropriately singled out a subordinate for punishment, subjected subordinates to undue scrutiny and intimidation, and was less than forthcoming with investigators.  (Lee Rep., ECF No. 35.)   The report concluded that Lt. J. had employed a managerial style "consisting of intimidation and threats, and lacking fairness, support, and constructive guidance."   (*Id.* at 10-11.)  On November 19, consistent with Lee's recommendation, Chief Cox issued Lt. J. the following discipline: a suspension for one (twenty-four-hour) shift, a written reprimand, referral for supervisory training, and a transfer to a different fire station.  (Lee Aff. ¶ 15.; Cox/Lt. J. Letter, ECF No. 37.)

On September 25, 2014, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that the Department treated him less favorably than it did Lt. J., who was similarly-situated, and that the Department did so because of the respective races of the two officers.  (EEOC Charge, ECF No. 31-35.)

Cox retired from the Department in January of 2014, and Chief Allan C. Graves assumed command.  (Cox Depo. 10:17–11:1; Graves Aff. ¶ 2.)  Subsequently, both Lt. J. and Plaintiff appealed their respective disciplinary sanctions.  (Graves Aff. ¶¶ 17, 20.)  Graves rescinded Lt. J.'s discipline on February 2, 2015, but formally declined to do so for Plaintiff on April 2, 2015. (*Id.* at ¶¶ 18, 22.)

## III.  ANALYSIS

The four counts contained in Plaintiff's complaint allege discrimination in Defendant's imposition of discipline, each under a different statute.  Because Plaintiff's EEOC complaint

failed to comply with the deadlines set out in Title VII of the Civil Rights Act of 1964 ("Title VII") and Title 20 of the Maryland State Government Article ("Maryland Title 20"), his claims contained in Counts I and II will fail.   Because Plaintiff offers no direct or indirect evidence of Defendant's discriminatory intent and has failed to make out a prima facie case of discrimination, his claims in Counts III and IV will likewise fail.

### A.   Timeliness of Plaintiff's EEOC Complaint

Title VII and Maryland Title 20 both require a plaintiff to seek administrative remedies before initiating a lawsuit, and both impose a deadline by which an administrative complaint must be filed.   Because Plaintiff failed to file his EEOC complaint within the statutorily-imposed period for both the federal and state claims, judgment in Defendant's favor is proper as to Counts I and II of Plaintiff's complaint.

### 1.   Timeliness Under Title VII

Title VII makes it unlawful for an employer to discriminate against any employee with respect to his compensation or conditions of employment (or to take any other enumerated action) because of the employee's race, color, religion, sex, or national origin.   42 U.S.C. § 2000e-2(a) (2015).   The statute creates a private right of action for an employee who alleges discrimination against his employer, but only if the employee first files a timely complaint with the EEOC and the EEOC declines to bring a case on the employee's behalf.   42 U.S.C. § 2000e-5(f) (2015).   To be timely, an EEOC complaint must be filed within 180 days "after the alleged unlawful employment practice occurred."   42 U.S.C. § 2000e-5(e)(1) (2015).   That deadline is extended to 300 days in deferral states such as Maryland.   *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008) (per curiam).   The limitations period begins to run when the employer makes the decision and the employee is notified.   *Del. State Coll. v. Ricks*, 449 U.S. 250, 259, 561 (1980); *see also Mezu v.*

*Morgan State Univ.*, 367 F. App'x 385, 388 (4th Cir. 2010) (per curiam) (calculating a deadline for filing a Title VII claim based on the post-mark date of an employer's letter denying a promotion to the plaintiff).

In the instant case, Defendant determined the details of Plaintiff's discipline, including his demotion, on November 27, 2013. Defendant immediately communicated the information to Keith Whalen, Plaintiff's union representative, who notified Plaintiff on the same day. (Cox Depo. 47:18–49:14; Willis Depo. 127:3–130:2.) Therefore, Plaintiff's deadline to file a timely complaint with the EEOC was 300 days later, on Tuesday, September 23, 2014. However, Plaintiff did not file his EEOC complaint until Thursday, September 25, 2014. (EEOC Charge.) Accordingly, Plaintiff's civil complaint did not comply with Title VII's requirement that he first file a *timely* request with the EEOC, and summary judgment in Defendant's favor is appropriate as to Plaintiff's Title VII claim (Count II).

Plaintiff argues that the limitations period for filing his administrative complaint did not begin to run until he received written notice of his discipline on December 4, 2013, thus making his EEOC complaint due on or before September 30, 2014. (Pl's Mem. in Opp'n 23-24, ECF No. 31.) In support of this position, Plaintiff points out that no member of the Department personally notified him of his demotion before December 4, 2013, and that the actual details of his discipline varied slightly from those communicated to him by Whalen on November 27. (*Id.*) However, during the negotiations surrounding Plaintiff's discipline, Whalen was acting in a representative capacity on Plaintiff's behalf. (Willis Decl. ¶ 5.) Therefore, when the Department gave notice to Whalen, it gave effective notice to Plaintiff.[5] Similarly, it is the content of the Department's communication to Whalen that is relevant, not Whalen's communication to

---

[5] Courts have looked to principles of agency law to determine receipt of notice in other Title VII contexts. *See, e.g.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93 (1990) (holding that a plaintiff received effective notice of an EEOC determination at the time that his counsel received actual notice).

Plaintiff.   Nonetheless, to the extent that the information Whalen passed on to Plaintiff is relevant, the only way in which the actual details of Plaintiff's discipline were less favorable than the details provided by Whalen is regarding the date on which Plaintiff would be eligible to re-apply for a promotion to an officer's rank.  *See* supra, note 3.  Despite this minor discrepancy, Whalen's notice clearly conveyed to Plaintiff that he faced a negative employment event (*i.e.*, a demotion).  Moreover, Plaintiff's eventual EEOC complaint that he was disciplined differently from Lt. J. does not rely on any details that were omitted from Whalen's notice to Plaintiff. Therefore, Plaintiff's argument fails and, per Title VII, his opportunity to file an EEOC complaint began on November 27, 2013, and expired September 23, 2014.   Accordingly, Defendant's motion for summary judgment will be granted as to Count II.

### 2.  Timeliness Under Maryland Title 20

Maryland's state law analog of Title VII can be found at Title 20 of the Maryland State Government Article.  Like its federal counterpart, the Maryland statute prohibits discrimination in employment and creates a private right of action for the victim of such discrimination who first files a timely administrative complaint.  Md. Code Ann., State Gov't §§ 20-602, 20-1013 (LexisNexis 2014).  The time limit to file a complaint with Maryland's Commission on Civil Rights is six months.  State Gov't § 20-1004.  However, the statutory requirement is also satisfied if the plaintiff files a timely complaint with federal authorities.  State Gov't § 20-1013. Courts have taken this to mean that an EEOC complaint filed within the time limit allotted by Title VII will also satisfy the requirements of the Maryland statute.  *See, e.g., Bishop v. Bd. of Educ. of Calvert Cty.*, Civ. No. DKC 11-1100, 2011 WL 2651246, at *4 (D. Md. July 5, 2011), *aff'd sub nom. Bishop v. Bd. of Educ. for Calvert Cty. Pub. Schs.*, 466 F. App'x 261 (4th Cir. 2012).

Plaintiff never filed a complaint with Maryland's Commission on Civil Rights, but his limitations period for doing so expired on May 27, 2014.  Thus, prior to commencing the instant suit, Plaintiff did not file a timely administrative charge under state law.  As stated above, his complaint with federal authorities was not timely under Title VII.  For those reasons, his state law claim under Maryland Title 20 fails, and the Court will grant summary judgement to Defendant on Count I.

### B.    The Merits of Plaintiff's Discrimination Claims

Even if Plaintiff's EEOC complaint had been timely, his claims under Counts I and II would still fail on their merits, and his claims under Counts III and IV would fail simultaneously and for the same reasons.  Accordingly, the Court will grant Defendant's motion for summary judgment on these counts as well.

Count III alleges a violation of Plaintiff's right to equal protection under the law as guaranteed by Maryland's Declaration of Rights.  *See Murphy v. Edmonds*, 601 A.2d 102, 107 (Md. 1992) ("Although the Maryland Constitution contains no express equal protection clause, it is settled that the Due Process Clause of the Maryland Constitution, contained in Article 24 of the Declaration of Rights, embodies the concept of equal protection of the laws to the same extent as the Equal Protection Clause of the Fourteenth Amendment.").  Count IV alleges a violation of 42 U.S.C. § 1983.  Originally enacted as part of the Civil Rights Act of 1871, § 1983 establishes a right of action against someone who, under color of state law, subjects another person to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."  42 U.S.C. § 1983 (2015).  This statute "provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In the instant case, Plaintiff seeks to use § 1983 to preserve his rights guaranteed under the

Fourteenth Amendment's Equal Protection Clause (*see* Compl. ¶ 91).   The Court employs a common analysis in reviewing the merits of all of Plaintiff's claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (observing that courts use the same approach to analyze claims of racial discrimination brought under Title VII, § 1981, and § 1983); *Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011) (indicating that Maryland courts rely on federal Title VII cases when interpreting cases brought under Title 20 of the Maryland State Government Article); *Murphy*, 601 A.2d at 108 (noting that the principle of equal protection under Article 24 of the Maryland Declaration of Rights applies "in like manner and to the same extent as" the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution).

There are two principal avenues by which a plaintiff may prevail in an action for employment discrimination: he can either present evidence (direct or indirect) that his employer had a discriminatory motive when it initiated a negative employment event against him, or he can engage in the familiar, three-step burden-shifting approach first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007).  Under the latter approach, the plaintiff is first required to present a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff satisfies the initial burden of production, a presumption of discrimination arises, and the defendant will next be required to offer a legitimate, non-discriminatory reason for its action.  *Id.* Assuming the defendant does so, the burden finally returns to the plaintiff to show that the defendant's explanation is merely pretext to cover a discriminatory motive.  *Id.* at 804.

### 1.   A Prima Facie Case of Discrimination

Plaintiff has not offered direct or indirect evidence of the Department's discriminatory action, and both parties agree that the Court should evaluate his claim according to a *McDonnell Douglas* approach.  (Def.'s Mem. in Supp. 18, ECF No. 23-1; Pl.'s Mem. in Opp'n 24.)  Because

Plaintiff has failed to present a satisfactory comparator who received preferable treatment, he has not met his burden for the first step under *McDonnell Douglas*. Thus, Plaintiff's claims fail, and summary judgment in Defendant's favor is appropriate.

The purpose of having a plaintiff establish a prima facie case of employment discrimination is to eliminate the most common nondiscriminatory reasons for the employer's conduct. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981). In the context of a suit alleging disparate discipline, a plaintiff seeking to establish a prima facie case under *McDonnell Douglas* must demonstrate that (1) he is a member of a protected class, (2) his misconduct was of comparable seriousness to that of an employee outside of his protected class, and (3) he experienced more severe discipline than that imposed on the similarly-situated employee. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). "The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). The plaintiff must show that he and the comparator "are similarly situated in all relevant respects," including evidence that the two employees "dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (unpublished); *see also Popo v. Giant Foods LLC*, 675 F. Supp. 2d 583, 589 (D. Md. 2009) ("An employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity."). In attempting to determine whether relevant occurrences of misconduct were comparable for the purposes of a disparate discipline analysis, a district court must gauge the "gravity of offenses on a relative scale" and may consider "the harm caused or threatened. . .

and the culpability of the offender." *Moore v. City of Charlotte, N.C.*, 754 F.2d 1100, 1107 (4th Cir. 1985) (internal quotation marks omitted).

Plaintiff argues that he was discriminated against because of his race, and it is without question that his discipline was more severe than that of his proposed comparator, Lt. J., who is of a different race. Accordingly, Plaintiff has made out the first and third elements of his prima facie case, and the only disputed question is whether Lt. J. was similarly situated "in all relevant respects."

The first and perhaps most relevant difference between the Department's discipline of Plaintiff and Lt. J. is that the two held different ranks. Even if the two engaged in identical misconduct, the Department would arguably be justified in imposing disparate discipline based on rank alone as it is not unreasonable for an employer to hold a manager with more authority to a higher standard than one with less. *See Carr v. Wis. Dep't of Corr.*, 129 F. App'x 306, 310 (7th Cir. 2005) ("[A] difference in rank alone is significant to the determination of whether employees are similarly situated."). The record shows that a Captain—which was Plaintiff's rank—has greater responsibility than a Lieutenantin that he or she is tasked with oversight of an entire firehouse as opposed to a single shift. (Graves Aff. ¶ 13.) Furthermore, a Captain is responsible for supervising several Lieutenants. (*Id.* at ¶ 14.) The relative scope of responsibility is particularly relevant to this case, as a Captain is not only meant to set an example for everyone else in the fire station (including Lieutenants), but is specifically tasked with training them in Departmental policy, including OPM-7. (Swindle Depo. 49:2–11, 50:8–17.) Thus, due to his holding a lower rank at the time of his discipline, Lt. J. is not a valid comparator for Plaintiff.

In resistance to such a conclusion, Plaintiff points to the similarity of the job responsibilities of a Captain and a Lieutenant and to the Departmental practice of allowing Lieutenants to fill in when Captain positions are vacant. (Pl.'s Mem. in Opp'n 27; Cox Depo 167:3–169:8.) Unavailing is Plaintiff's reliance on *Brennan v. Prince William Hosp. Corp.* for the proposition that "[j]ob descriptions and titles . . . are not decisive. Actual job requirements and performance are controlling." 503 F.2d 282, 288 (4th Cir. 1974). That case, brought under the Equal Pay Act of 1963, dealt with a hospital's disparate pay for the comparable roles of nurse's aide and orderly when assignment to those positions was based solely on gender. *Id.* at 285. *Brennan* did not address a situation of disparate discipline and, more importantly, did not equate two managerial roles when one reported to the other. Thus, *Brennan* is no more useful as an analog for the instant case than Lt. J. is as a comparator for Plaintiff.

Putting aside the difference in their respective positions, Plaintiff's conduct was also distinguishable from that of Lt. J. It is true that both officers were found to have been deficient supervisors and to have been less than forthcoming with investigators. (Swindle Rep. 9–10; Lee Rep. 9–10.) However, the Department's investigation into Lt. J. focused on what it found to be his overly harsh disciplinary approach, particularly as applied to new recruits on his shift. (Lee Rep. 6–8.) By contrast, the Department found Plaintiff to have engendered a hostile work environment toward a protected class in violation of Departmental policy (as encapsulated in OPM-7). (Swindle Rep. 6, 9–10.) The report focused particularly on Plaintiff's routine use of highly explicit and sexualized profanity as well as his permitting others to engage in the same; the profanity was often directed at the lone female firefighter on Plaintiff's shift. (*Id.* at 2–6.) The report also found him to have participated in conduct that could be construed as abusive

(smashing an egg on the head of a subordinate and blowing cigar smoke in a subordinate's face),

and to have deliberately agitated relationships between his subordinates. (*Id.* at 7–9.)  The events

chronicled in the Department's respective reports make it difficult to deny that Plaintiff's and Lt.

J.'s misconduct were distinguishable and that Plaintiff's was the more serious of the two.[6]

Because of the distinctions in his role and in his misconduct, Lt. J. is not a valid

comparator for Plaintiff.   Plaintiff has thus failed to make out a prima facie case of

discrimination—his burden under the first step of a *McDonnell Douglas* analysis—and no

reasonable juror could find in Plaintiff's favor.  Consequently, the Court will grant Defendant's

motion for summary judgment on Counts III and IV.[7]

### 2.  Defendant's Race-Neutral Explanation for Defendant's Demotion

Because the Court bases its decision for summary judgment on the untimeliness of

Plaintiff's administrative complaint and on Plaintiff's failure to make out a prima facie case of

discrimination, Defendant was not obliged to offer a coherent, race-neutral explanation for its

disciplinary action against Plaintiff.  Nonetheless, the Court finds Defendant to have borne this

unnecessary burden.

If an employee proceeding under *McDonnell Douglas* establishes a prima facie case of

discriminatory discipline, the employer then has a burden of production to offer a legitimate,

nondiscriminatory reason for its conduct. *Burdine*, 450 U.S. at 253.  The employer need not

persuade the court that it was actually motivated by the proffered reason, but must merely raise

an issue of fact that would justify a reasonable juror in finding that the employer had not

---

[6] Another distinction between the reports on Plaintiff's and Lt. J.'s respective misconduct lies in the fact that the investigations underlying those reports were conducted by different investigators.  While having a common decision-maker is necessary for two employees to be similarly situated, *Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007) (per curiam), it is not unreasonable for one assessing similarity to also consider whether the decision-maker had a common source of information from which to draw his conclusions.

[7] If the Court did not grant Defendant's motion as to Counts I and II based on the untimeliness of Plaintiff's administrative complaint, it would do so on the same grounds as its ruling on Counts III and IV.

14

discriminated. *Id.* at 254–55. The explanation is sufficient if it meets the employee's prima facie case with a legitimate reason for the employer's action and if it adequately frames the issue such that the employee has a fair opportunity to demonstrate pretext. *Id.* at 255–56.

The Department explains that it decided to remove Plaintiff from a supervisory position because of his involvement in "conduct . . . which is unbecoming both as an employee and supervisor and that [he] engaged in discrimination and harassment" in violation of applicable County law and Departmental regulation. (*See* Cox/Willis Letter.) According to the Department, it disciplined Plaintiff more harshly than Lt. J. because of differences in their respective conduct (Lt. J. was found to have employed an inappropriate management style, not to have been guilty of discrimination or harassment). (*See* Cox Depo.175:11–178:17.)

The Department has presented a race-neutral explanation for its decision concerning the discipline of Plaintiff (and its decision as to Lt. J.), which, if the analysis progressed that far, would satisfy step two under *McDonnell Douglas* and shift the burden back to Plaintiff to demonstrate pretext in this explanation.

### 3. Plaintiff's Attempt to Demonstrate Pretext

Plaintiff has failed to demonstrate pretext in the Department's explanation for its decision. Therefore, even if Plaintiff's administrative complaint had been timely and he had made out a prima facie case of discriminatory discipline, summary judgment for Defendant would still be warranted on all counts.

Once an employer offers a legitimate reason for disciplining its employee, the employee bears the ultimate burden of persuasion that the defendant's proffered explanation was not the true reason for the discipline, but merely a pretext for discrimination. *Burdine*, 450 U.S. at 256. An employee may establish pretext either by showing that the employer's proffered explanation

is unworthy of credence or by presenting evidence that a discriminatory reason is more likely to have motivated the employer's decision-making. *Id.*

Plaintiff attempts to demonstrate pretext by arguing that Defendant could not have reasonably relied on Swindle's report as a basis for demoting Plaintiff. (Pl's Mem. in Opp'n 31-33.) Plaintiff's protest focuses on the facts that (1) the investigation commenced with an untimely complaint (it was not issued until 263 days after at least some of the incidents that gave rise to it) (Willis Decl. ¶ 3), (2) the resulting report relied on the credibility of testimony by a subordinate whose second statement to investigators differed from her first (Swindle Rep. 3), and (3) Plaintiff had an otherwise positive employment record with the Department (*see* Willis Decl. ¶¶ 6–9, 13; Commendations, ECF Nos. 31-20, 31-21, 31-22). However, Swindle claims to have considered all of these factors in arriving at his conclusion. (Swindle Depo. 49:12–50:17.) With respect to the timeliness of the complaint and Plaintiff's operational effectiveness, these factors do not diminish the seriousness of his offensive conduct. As for the reliability of the witness's testimony, Plaintiff does not address her explanation for changing her statement (Swindle Rep. 3 n.2) or the fact that the evidence she ultimately offered was corroborated by multiple witnesses (*id.* at 2–5). The Court is not called upon here to judge the credibility of the witness's statements, but only to ask whether Plaintiff has shown pretext in the Department's claim that it relied on Swindle's report when demoting Plaintiff. The Court finds the record to contain no facts that would allow a reasonable juror to find such pretext.

Plaintiff's other argument for pretext is that the Department could not have believed Plaintiff's behavior to be as problematic as it claims. (Pl.'s Mem. in Opp'n 29.) For instance, Plaintiff contends that the use of obscenity was common among firefighters in the Department. (*Id.* (citing Swindle Depo. 54:18–21).) However, he fails to present any evidence that the type of

graphic, sexual vulgarity he was found to have regularly used was tolerated by the Department. (*See* Swindle Depo. 54:18–56:11; Swindle Rep. 6; Cox Depo. 93:3–94:9.)  Furthermore, Plaintiff offers nothing to contradict Defendant's evidence that Division Chief Swindle had previously recommended disciplining other employees for their use of vulgar language.  (*See* Swindle Depo. 56:12–57:5; Cox Depo. 41:6–43:3.)  Plaintiff's protests notwithstanding, the fact that his female subordinate joined him in using vulgarity is irrelevant.   Part of Defendant's objection to Plaintiff's conduct was that he was a Captain and was therefore in charge of maintaining decorum.  (Swindle Depo. 49:2–11, Cox Depo. 49:16–50:2)  The Court need not make a value judgment concerning whether the words and expressions used by Plaintiff are more offensive than those used by other firefighters or officers.   Rather, the question is whether the Department's explanation that it acted on such a judgment was unworthy of credence.  No reasonable fact finder could reach such a conclusion.   Therefore, Plaintiff has failed to show pretext as to the Department's judgment concerning the seriousness of Plaintiff's conduct.  Thus, Plaintiff has failed his burden under the third step of the *McDonnell Douglas* analysis.

Were it not granted for the reasons stated in Parts IV.A. and IV.B.1., above, Plaintiff's failure to demonstrate pretext in Defendant's race-neutral explanations would warrant summary judgment in Defendant's favor on all counts.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment on all counts, and the case will be closed.  A separate order shall issue.

DATED this 10th day of March, 2017.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge